UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                    CASE NO. 08-20199

v.                                    PAUL D. BORMAN
                                    UNITED STATES DISTRICT JUDGE

GUILLERMO SANTAMARIA,

      Defendant.
_____/

**ORDER**
**(1) DENYING DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE;**
**(2) AS TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS, IN LIGHT OF**
***CORLEY v. UNITED STATES*, ___ S.CT. ___, 77 LAW WEEK 4276, APRIL 7, 2009,**
**SETTING AN EVIDENTIARY HEARING MAY 13, 2009 AT 2:30 P.M. RE WHETHER**
**DEFENDANT'S STATEMENTS ARE INADMISSIBLE BECAUSE OF AN**
**UNREASONABLE DELAY IN BRINGING HIM BEFORE A JUDGE**

FACTS:

      The Court held a hearing on Defendant's Motion at which seven witnesses testified and the parties made a host of complex legal arguments both before the Court and in supplemental responses filed after the evidentiary hearing.

      This case involved a stop of the Defendant's vehicle for speeding, which proceeded to a disputed-consent search of the car, that uncovered evidence of new caulking and paint in the trunk, followed by a police canine positive alert for drugs, that resulted in removing the car to two police stations, (the second one had a hoist), the discovery of an add-on compartment in the rear, which was breached by officers yielding heroin wrapped in aluminum foil that is the subject of the motion to suppress.

      After Defendant's arrest, officers questioned him but terminated the questioning when Defendant raised the issue of whether he should talk to counsel prior to answering.

The next day while speaking with Defendant at the FBI office prior to his appearance before a Magistrate Judge, one of the agents that had been involved in the previous day's questioning, engaged Defendant in conversation that produced potentially incriminating statements that are the subject of the motion to suppress.

Defendant seeks to suppress both the heroin and the statements.

I.  The Motion to Suppress Evidence: The Stop/Duration of the Stop/K-9 Alert/Discovery and Seizure of the Heroin

Defendant does not really challenge the traffic stop, and for good reason. Testimony at the hearing supports the basis for the traffic stop – violation of traffic laws. *Whren v. United States*, 517 U.S. 806 (1996).

The first issue for decision is whether, after the stop, Defendant gave consent to the officers to search the car for weapons and drugs.

The Court finds the officers' testimony credible that Defendant did understand English and consented to their search of the car.

Supporting the Court's finding that Defendant understood English is the testimony at the hearing, that earlier that day, while driving from Chicago to Detroit, Defendant's car skidded off the road; police responded; a tow truck responded; and Defendant communicated in English with both the police and the tow truck driver, explaining his plight, his needs, and negotiating the cost of the ensuing tow truck rescue. The Court further finds credible the testimony of the instant arresting agents that Defendant was able to communicate with them in English. This further supports the Court's conclusion that he understands English, as does the evidence that Defendant has resided in the United States for 6 years. Further Defendant testified at the hearing, albeit in Spanish, utilizing an interpreter, that at his traffic stop the police officer asked for his license and

registration in English and that he complied.

Accordingly, although the Defendant sought and received (automatically – no language test required) an interpreter for the instant hearing, the Court credits the hearing testimony of many law enforcement witnesses that Defendant conversed with them in English: TR. P. 40, Raboczkay; TR P. 71, Schook; TR. P. 105, Szokala; TR. P. 149, Connolly (Spanish & English). Accordingly, the Court concludes that Defendant understood the officers that conversed with him in English.

The Court concludes that Defendant, understanding English, did voluntarily consent to the search of his car. Task Force Officer David Szokala testified that he asked Defendant twice whether he could search the car for drugs, weapons, and currency (TR.P. 108), and that both times Defendant affirmatively consented. TR. P. 106, 108. The Court credits the officers' testimony that Defendant consented to their search of the car.

The searching officers discovered in the trunk new caulking and new paint, which led them to reasonably conclude the likelihood of drugs being hidden in a secret compartment. TR. P.72, Schook; TR. P. 110, Szokala.

In the meantime, the officers had called Michigan State Police Trooper Dawkins who handled the K-9 named QWIK. The Court credits the testimony that established that Dawkins arrived within 15-20 minutes of the stop, and QWIK alerted for drugs. The car was then transported to the Ypsilanti Michigan State Police Post, but because that station lacked a hoist to allow checking underneath the caulked and painted area of the trunk, the car was then driven to the Taylor Police Department, placed on a hoist, and the officers discovered a secret compartment which they punctured to reveal an aluminum foil wrapped packet that field tested

3

for heroin.

As to the brief time required for the canine search, after initially finding the new caulking and paint in the trunk, the Court finds that was a reasonable time for police to investigate their suspicions. In *United States v. Davis*, 430 F.3d 345, 355 (6th Cir 2005), the Sixth Circuit approved the police's detention of a car for 30 minutes to allow a drug-sniffing dog to arrive. In *United States v. Johnson*, 267 Fed.Appx. 412 (6th Cir 2008) (unpublished), the Sixth Circuit held that a 43 minute detention was a reasonable period of time to allow police to contact a canine team, and have the arriving team check for the presence of drugs. Both cases were cited with approval in *United States v. Farmer*, No. 06-4419 (6th Cir 2008) Aug. 13, 2008 (unpublished).

Here the testimony clearly indicates that the canine unit arrived and searched well before 43 minutes after the stop.

The Court further concludes that the canine alert, combined with the new caulking and paint, created probable cause to conclude that the car that Defendant was driving contained narcotics and justified the detention of the car and the Defendant and the further search and ultimate seizure of the heroin.

II.     <u>Defendants Post-Miranda Statements</u>

The Government's Supplemental Brief at page 11, as to their questioning of the Defendant on the day of the arrest/seizure, states:

> [T]he agents concluded that he had invoked his right to counsel and stopped the interview.

Both Task Force Agents (TFA), Pizana (TR. P. 143) and Connelly (TR. P. 148-49) decided to terminate the interview the night of the traffic stop and seizure of the heroin. Defendant was incarcerated overnight.

4

The next day, while the very same TFA Connolly processed "Defendant for transfer to the custody of the United States Marshal Service" (Gov't Supplement Brief P.11), according to the Defendant's testimony, in response to the prosecutor's question:

Q: Did he ask you general background questions as he was processing you?

A: He asked me the name of the car owner, but I said I didn't know who he was.

TR. P 35, Santamaria.

The prosecutor followed up:

Q: Did you ask this agent questions about cooperation?

A: Yes.

Special Agent Connolly testified that after asking Defendant the basic processing questions:

> He asked me what the process was from this point forward. And I explained to him the process of bringing him across here [from the FBI office in the McNamera Building], making his initial appearance, and talking with a court appointed attorney if he didn't have the money to pay for one. He had asked me what he could do to help.
> Then I responded, asking him what are you asking that you can do, what could you do?

TR. P. 153, Connolly. This situation occurred in an FBI office. Thereafter, the agent testified Defendant made certain statements that the Government seeks to introduce at trial as incriminating evidence in its case-in-chief.

The recent Supreme Court decision *Corley v. United States, supra*, held that under federal supervisory powers and Federal Rule of Criminal Procedure 5(a), Defendant must be taken before a Judge without unnecessary delay, within six hours after arrest, subject to certain reasonable delay. The instant facts, therefore, present two issues: Did the agent question the Defendant about the case rather than take him to Court expeditiously? (*Corley* issue). Did the

agent question the Defendant after he had invoked his right to counsel? (Constitutional issue).

This Court must first determine whether there is a non-constitutional supervisory power resolution of Defendant's Motion to Suppress his second day statements to TFA Connelly, before proceeding to an analysis of the Constitutional issue.

Accordingly, the Court will set an evidentiary hearing to take testimony on the time facts relevant to the supervisory power holding in *Corley*. That Defendant did not raise this issue at the instant pre-*Corley* hearing is logical, given the now-overruled Sixth Circuit precedent in *United States v. Christopher*, 956 F.2d 536, 538-39 (6th Cir. 1991), cited in *Corley*, U.S.L.Week 4278, as contrary to the *Corley* holding.

A hearing is set for **May 13, 2009 at 2:30 p.m.**.

SO ORDERED.

S/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated: April 29, 2009

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 29, 2009.

S/Denise Goodine  
Case Manager